**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**UTICA DIVISION**

| | |
|---|---|
| KEVIN WILLOUGHBY, Individually and for Others Similarly Situated<br><br>v.<br><br>BASSETT HEALTHCARE NETWORK | Case No. __1:23-cv-791 (LEK/DJS)__<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.    Kevin Willoughby (Willoughby) brings this class and collective action to recover unpaid overtime wages and other damages from Bassett Healthcare Network (Bassett).

2.    Willoughby worked for Bassett as a Security Officer at Bassett facilities in Cobleskill and Little Falls, New York.

3.    Like the Putative Class Members (as defined below), Willoughby regularly worked more than 40 hours in a workweek.

4.    But Bassett did not pay Willoughby and the Putative Class Members for all the hours they worked.

5.    Instead, Bassett automatically deducted 30 minutes a day from these employees' work time for so-called meal breaks.

6.    Willoughby and the Putative Class Members were thus not paid for that time.

7.    But Bassett fails to provide Willoughby and the Putative Class Members with *bona fide* meal breaks.

8.    And Willoughby and the Putative Class Members do not actually receive *bona fide* meal breaks.

9.      Instead, Bassett requires Willoughby and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and Bassett continuously subjects them to work interruptions during their unpaid "meal breaks."

10.     Bassett's auto-deduction policy violates the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (FLSA) and the New York Labor Law, N.Y. LAB. LAW §§ 190, *et seq.* and 650, *et seq.* (NYLL) and its implementing regulations, 12 N.Y.C.R.R. §§ 142, *et seq.* (NYCRR), by depriving Willoughby and the Putative Class Members of overtime pay for all overtime hours worked.

11.     Further, in addition to excluding time Willoughby and the Putative Class Members worked during their unpaid "meal breaks," Bassett also paid these employees different hourly rates (or "shift differentials") and/or bonuses depending on what type of shifts they worked.

12.     But Bassett failed to include these shift differentials and bonuses in calculating Willoughby's and the Putative Class Members' regular rates of pay for overtime purposes.

13.     Bassett's shift differential and bonus pay scheme violates the FLSA and NYLL by depriving Willoughby and the Putative Class Members of overtime compensation at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

## JURISDICTION & VENUE

14.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15.     The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

16.     This Court has general personal jurisdiction over Bassett because Bassett is a domestic corporation that is headquartered in Cooperstown, New York.

17.     Venue is proper because Bassett maintains its headquarters in Cooperstown, Otsego

County, New York, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

**PARTIES**

18.     Willoughby worked for Bassett as a Security Team Leader at Bassett's facilities in Cobleskill and Little Falls, New York from approximately March 2012 until January 2022.

19.     Throughout his employment, Bassett classified Willoughby as non-exempt and paid him on an hourly basis.

20.     Throughout his employment, Bassett subjected Willoughby to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks."

21.     But throughout his employment, Bassett failed to provide, and Willoughby did not actually receive, *bona fide* meal breaks.

22.     Further, throughout his employment, Bassett paid Willoughby under its shift differential and bonus pay scheme, paying him different hourly rates and/or bonuses depending on what type of shift he worked.

23.     But throughout his employment, Bassett failed to include these shift differentials and bonuses in calculating Willoughby's regular rate of pay for overtime purposes.

24.     Willoughby's written consent is attached as **Exhibit 1**.

25.     Willoughby brings this action on behalf of himself and other similarly situated non-exempt Security Officers who worked for, or on behalf of Bassett who (1) were subject to Bassett's automatic meal break deduction policy, and/or (2) were paid under Bassett's shift differential and bonus pay scheme.

26.     Bassett automatically deducts 30 minutes/shift from its Security Officers' recorded hours worked for so-called "meal breaks."

27.    But Bassett uniformly requires all its Security Officers to remain on-duty and perform compensable work throughout their shifts and continuously subjects them to interruptions during their unpaid "meal breaks."

28.    Further, Bassett uniformly pays its Security Officers' shift differentials and/or bonuses that Bassett fails to include in calculating their regular rates of pay for overtime purposes.

29.    The FLSA Collective of similarly situated employees is defined as:

**All hourly, non-exempt Security Officers who worked for, or on behalf of, Bassett at any Bassett facility[1] who received (1) an automatic meal period deduction, (2) shift differentials, and/or (3) bonuses at any time during the past 3 years ("FLSA Collective Members" or "FLSA Collective").**

30.    Willoughby also seeks class certification of such a class under the NYLL pursuant to Fed. R. Civ. P. 23.

31.    The New York Class of similarly situated employees is defined as:

**All hourly, non-exempt Security Officers who worked for, or on behalf of, Bassett at any Bassett facility[2] in New York who received (1) an automatic meal period deduction, (2) shift differentials, and/or (3) bonuses at any time during the past in the past 6 years and 228 days[3] from the filing of this Complaint ("New York Class Members" or the "New York Class").**

32.    The FLSA Collective Members and the New York Class Members are collectively referred to as the "Putative Class Members" or "Putative Classes."

---

[1] *See* https://www.bassett.org/locations (identifying all Bassett facilities) (last visited June 22, 2023).

[2] *Id.*

[3] The statute of limitations was tolled 228 days due to Governor Cuomo's Executive Order 202.8 (2020) and subsequent orders Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55.1, 202.60, and 202.67. In total, the Executive Orders were effective and implemented tolling for 228 days, from March 20th to November 3, 2020. *See McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings County 2021) (calculating that, together, the Executive Orders lasted 228 days).

33.     Bassett is a New York non-profit corporation that maintains its headquarters in Cooperstown, New York.

34.     Bassett may be served with process by serving its President & CEO, **Dr. Tommy Ibrahim, at ONE ATWELL ROAD, COOPERSTOWN, NEW YORK 13326**, or wherever he may be found.

### COVERAGE UNDER THE FLSA

35.     At all relevant times, Bassett was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

36.     At all relevant times, Bassett, as a hospital network and institution primarily engaged in healthcare, was an "enterprise" within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

37.     At all relevant times, Bassett was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because Bassett, as a hospital network, is engaged in the operation of a hospital and is an institution primarily engaged in providing healthcare services.

38.     At all relevant times, Bassett has had an annual gross volume of sales made or business done of not less than $500,000.00.

39.     At all relevant times, Bassett has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cellphones, computers, medical tools and equipment, personal protective equipment, etc. – that have been moved in or produced for commerce.

40.     At all relevant times, Willoughby and the Putative Class Members were Bassett's "employees" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

41.     At all relevant times, Willoughby and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

42.     Bassett uniformly deducted 30 minutes/shift from Willoughby's and the Putative Class Members' wages for meal breaks, even when these employees did not actually receive *bona fide*, uninterrupted meal breaks.

43.     As a result, Bassett uniformly failed to pay Willoughby and the Putative Class Members for this compensable work, including overtime, in violation of the FLSA.

44.     Bassett's automatic meal break deduction policy, which deprives Willoughby and the Putative Class Members of overtime compensation for all overtime hours worked during the weeks in which these employees work over 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & €.

45.     Further, Bassett uniformly paid Willoughby and the Putative Class Members shift differential payments and/or bonuses.

46.     But Bassett uniformly failed to include Willoughby's and the Putative Class Members' shift differentials and bonuses in calculating these employees' regular rates of pay for overtime purposes.

47.     As a result, Bassett failed to pay Willoughby and the Putative Class Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – in violation of the FLSA.

48.     Bassett's shift differential and bonus pay scheme, which deprives Willoughby and the Putative Class Members of overtime compensation at the proper premium rate, violates the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

49.     Bassett bills itself as "is an integrated health system that provides care and services to people living in a 5,600 square mile region in upstate New York[:]"[4]



50.     To meet its business objectives, Bassett employs Security Officers, including Willoughby and the Putative Class Members, to provide security services to its various healthcare facilities it owns and/or operates across New York.

51.     Indeed, Bassett owns and/or operates all the healthcare facilities where Willoughby and the Putative Class Members work.

52.     Bassett controls and dictates Willoughby's and the Putative Class Members' rates and methods of pay.

---

[4] https://www.bassett.org/sites/default/files/2022-08/Bassett_Annual_Report_2021.pdf (last visited June 22, 2023).

53.     Bassett maintains control, oversight, and direction over Willoughby and the Putative Class Members, including the promulgation and enforcement of policies affecting the payment of wages (including overtime compensation), meal breaks, timekeeping, performance standards, and other employment policies.

54.     Bassett maintains control, oversight, and direction of Willoughby and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, and other employment practices.

55.     Bassett has the authority to hire, fire, and discipline the Security Officers working at its various healthcare facilities, including Willoughby and the Putative Class Members.

56.     Indeed, Bassett dictates the hiring standards and all other employment policies and practices in place at its various healthcare facilities where Willoughby and the Putative Class Members work.

57.     For example, all Bassett employees, including Willoughby and the Putative Class Members, must adhere to Bassett's uniform Code of Conduct,[5] regardless of which Bassett facility they work at.

58.     And to work as a Security Officer at any Bassett healthcare facility, Willoughby and the Putative Class Members are required to apply through Bassett's centralized hiring system.[6]

59.     Bassett controls Willoughby's and the Putative Class Members' schedules and assignments.

---

[5] https://www.bassett.org/sites/default/files/2023-05/Bassett_Healthcare_Network_Code_of_Conduct_2023_v2.pdf (last visited June 22, 2023).

[6] *Compare, e.g.,* https://jobs.bassett.org/jobs/6457?lang=en-us (Security Officer job posting for Bassett's facility in Cooperstown, New York) *with, e.g.,* https://jobs.bassett.org/jobs/6614?lang=en-us (Security Officer job posting for Bassett's facility in Oneida, New York) (both last visited June 22, 2023).

60.    Bassett controls Willoughby's and the Putative Class Members' security work.

61.    Bassett requires Willoughby and the Putative Class Members to follow Bassett's uniform and system-wide policies, procedures, and specifications.

62.    Willoughby's and the Putative Class Members' work must strictly adhere to the quality standards put in place by Bassett.

63.    Bassett prohibits Willoughby and the Putative Class Members from varying their job duties outside Bassett's guidelines and expectations and requires Willoughby and the Putative Class Members to follow Bassett's uniform policies, procedures, and directives.

64.    Bassett's facilities have common ownership, management, and/or a centralized human resources department.

65.    Indeed, Bassett has a centralized leadership team that oversees operations at all its various healthcare facilities.[7]

66.    Without the security work Willoughby and the Putative Class Members perform, Bassett would not be able to complete its business objectives of safely operating healthcare facilities across upstate New York.

67.    Indeed, Willoughby's and the Putative Class Members' security work is integral to Bassett's business objectives of safely operating healthcare facilities across upstate New York.

68.    Willoughby and the Putative Class Members rely on Bassett for work and compensation.

69.    Willoughby and the Putative Class Members do not substantially invest in the tools, materials, and equipment required to complete their security jobs.

---

[7] *See* https://www.bassett.org/about-us/bassett-healthcare-network-leadership (last visited June 22, 2023).

70.     Rather, Bassett incurs the large-scale business and operating expenses like payroll, marketing, facilities, security vehicles, etc. that the Security Officers working at its various healthcare facilities, including Willoughby and the Putative Class Members, need to perform their security jobs.

71.     Bassett sets Willoughby's and the Putative Class Members' work schedule, which necessarily prohibits them from working other jobs while working for Bassett.

72.     Bassett maintains employment records for the Security Officers working at its various healthcare facilities, including Willoughby and the Putative Class Members.

73.     In sum, the Security Officers that work at Bassett's various healthcare facilities, including Willoughby and the Putative Class Members, are Bassett's employees.

74.     Bassett uniformly classifies the Security Officers that work at Bassett's various healthcare facilities, including Willoughby and the Putative Class Members, as non-exempt and uniformly pays them on an hourly basis.

75.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

76.     For example, Willoughby worked for Bassett as a Security Officer at Bassett's healthcare facilities in Cobleskill and Little Falls, New York from approximately March 2012 until January 2022.

77.     Throughout his employment, Bassett classified Willoughby as non-exempt and paid him on an hourly basis.

78.     Throughout his employment, Bassett subjected Willoughby to its common practice of automatically deducting 30 minutes from his recorded hours worked and wages each shift for meal breaks, regardless of whether he actually received a *bona fide* meal break.

79.     But throughout his employment, Willoughby did not actually receive *bona fide* meal breaks.

80.    Further, throughout his employment, Bassett paid Willoughby under its shift differential and bonus pay scheme, paying him different hourly rates and/or bonuses depending on what type of shift he worked.

81.    But throughout his employment, Bassett failed to include Willoughby's shift differentials and bonuses in calculating his regular rate of pay for overtime purposes.

82.    As Bassett Security Officers, Willoughby's and the Putative Class Members' primary responsibilities include maintaining security and safety to their assigned facility; ensuring the safety of staff, patients, and visitors at their assigned facility; patrolling assigned areas throughout their assigned facility, including buildings within the main campus; responding to and investigating any situations reported to the Security Office; documenting and logging any incidents that occur; enforcing all Bassett and facility rules and regulations; and maintaining security records and logs.

83.    Willoughby and the Putative Class Members performed their jobs under Bassett's supervision, and using materials, equipment, and technology approved and supplied by Bassett.

84.    Bassett requires Willoughby and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

85.    At the end of each pay period, Willoughby and the Putative Class Members received wages from that were determined by common systems and methods that Bassett selected and controlled.

86.    Bassett requires its hourly, non-exempt Security Officers, including Willoughby and the Putative Class Members, to record their hours worked using Bassett's timeclock system.

87.    Further, Bassett subjects its hourly, non-exempt Security Officers, including Willoughby and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

88.    Specifically, Bassett automatically deducts 30 minutes from Willoughby's and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal period.

89.    But Bassett fails to provide Willoughby and the Putative Class Members with *bona fide* meal periods.

90.    And Willoughby and the Putative Class Members do not actually receive *bona fide* meal breaks.

91.    Instead, Bassett requires Willoughby and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts and continuously subjects them to work interruptions during their unpaid meal periods.

92.    Indeed, because of these constant work interruptions, Willoughby and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

93.    Rather, during their unpaid "meal breaks," Willoughby and the Putative Class Members are forced to substantially perform their regular security job duties and responsibilities.

94.    Thus, Willoughby and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for Bassett's – not these employees' – predominant benefit.

95.    This unpaid time is compensable under the FLSA and NYLL because Bassett knew, or should have known, that (1) Willoughby and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 30 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant interruptions, (7) they remained on Bassett's premises during their

unpaid meal period, and/or (8) they predominantly spent their unpaid meal periods performing their regular security duties for Bassett's predominant benefit.

96.     Bassett failed to exercise its duty to ensure Willoughby and the Putative Class Members were not performing work that Bassett did not want performed during their unpaid "meal breaks."

97.     Despite accepting the benefits, Bassett did not pay Willoughby and the Putative Class Members for the compensable work they performed during their "meal breaks."

98.     Thus, under Bassett's uniform automatic meal break deduction policy, Willoughby and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked in excess of 40 hours in violation of the FLSA and NYLL.

99.     Bassett knows Willoughby and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because Bassett expects and requires these Security Officers to do so.

100.    But Bassett does not pay Willoughby and the Putative Class Members for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA and NYLL.

101.    In addition to excluding time Willoughby and the Putative Class Members worked during their unpaid meal breaks, Bassett also paid these employees shift differentials and/or bonuses depending on what type of shifts they worked.

102.    But Bassett failed to include these shift differentials and bonuses in calculating Willoughby's and the Putative Class Members' regular rates of pay for overtime purposes.

103.    Bassett's shift differential and bonus pay scheme violates the FLSA and NYLLL, by depriving Willoughby and the Putative Class Members of overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

104.    Willoughby worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

105.    Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

106.    Indeed, every workweek, Willoughby and the Putative Class Members worked 12-hour shifts for at least 4 days a week.

107.    Willoughby and the Putative Class Members also routinely pick up additional 12-hour shifts and often work up to seven 12-hour shifts a week.

108.    And Willoughby and the Putative Class Members regularly are also required to work and perform their typical security job duties and responsibilities during their unpaid meal breaks "off the clock."

109.    As a result, Willoughby and the Putative Class Members routinely work in excess of 40 hours every workweek.

110.    Despite Bassett and the Putative Class Members working more than 40 hours a week, Bassett did not pay them overtime wages at 1.5 times their regular hourly rates – based on *all* renumeration received – for all overtime hours worked because (1) Bassett failed to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek, and/or (2) Bassett failed to include these employees' shift differentials and bonuses in calculating their regular rates of pay for overtime purposes in violation of the FLSA and NYLL.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

111.    Willoughby realleges and incorporates all other paragraphs by reference.

112.    Willoughby brings his case as a class and collective action under Section 216(b) of the FLSA and FED. R. CIV. P. 23.

113. The Putative Class Members were uniformly victimized by (1) Bassett's automatic meal break deduction policy and/or (2) Bassett's shift differential and bonus pay scheme, which are in willful violation of the FLSA and NYLL.

114. Other Putative Class Members worked with Willoughby and indicated they were paid in the same manner, performed similar work, and were subject to Bassett's same illegal automatic meal break deduction policy and/or Bassett's same illegal shift differential and bonus pay scheme.

115. Based on his experience with Bassett, Willoughby is aware Bassett's illegal practices were imposed on the Putative Class Members.

116. The Putative Class Members are similarly situated in all relevant respects.

117. Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime compensation.

118. Therefore, the specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

119. Rather, the Putative Classes are held together by (1) Bassett's uniform automatic meal break deduction policy and/or (2) Bassett's shift differential and bonus pay scheme, both of which systematically deprived Willoughby and the Putative Class Members of premium overtime pay for all hours worked in excess of 40 hours in a workweek.

120. The Putative Class Members are similarly denied overtime compensation when they work more than 40 hours in a workweek.

121. The back wages owed to Willoughby and the Putative Class Members will be calculated using the same records and using the same formula.

122. Willoughby's experiences are therefore typical of the experiences of the Putative Class Members.

123.    Willoughby has no interest contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

124.    Like each Putative Class Member, Willoughby has an interest in obtaining the unpaid wages owed under state and/or federal law.

125.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

126.    Absent a class and collective action, many Putative Class Members will not obtain redress for their injuries, and Bassett will reap the unjust benefits of willfully violating the FLSA and NYLL.

127.    Further, even if some of the Putative Class Members could afford individual litigation against Bassett, it would be unduly burdensome to the judicial system.

128.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

129.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

130.    Among the common questions of law and fact are:

a.    Whether Bassett engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and NYLL;

b.    Whether Bassett's automatic meal break deduction policy deprived Willoughby and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and NYLL;

c.   Whether Bassett failed to pay Willoughby and the Putative Class Members overtime compensation for all hours worked in excess of 40 hours in a workweek, including hours worked during missed and interrupted meal breaks, in violation of the FLSA and NYLL;

d.   Whether Bassett knew, or had reason to know, Willoughby and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA and NYLL;

e.   Whether Bassett failed to include Willoughby's and the Putative Class Member's shift differentials and bonuses in calculating these employees' regular rates of pay for overtime purposes in violation of the FLSA and NYLL;

f.   Whether Bassett's violations of the FLSA and NYLL resulted from a continuing course of conduct;

g.   Whether Bassett's decision not to pay Willoughby and the Putative Class Members overtime compensation for all overtime hours worked was made in good faith;

h.   Whether Bassett's decision not to include Willoughby's and the Putative Class Members' shift differentials and bonuses in calculating these employees' regular rates of pay for overtime purposes was made in good faith;

i.   Whether Bassett's failure to pay Willoughby and the Putative Class Members all their earned overtime wages was the result of a *bona fide* dispute; and

j.   Whether Bassett's violations of the FLSA and NYLL were willful.

131.   Willoughby and the Putative Class Members sustained damages arising out of Bassett's illegal and uniform employment policies.

- 17 -

132.    Willoughby knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

133.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Bassett's records, and there is no detraction from the common nucleus of liability facts.

134.    Therefore, the issue of damages does not preclude class or collective treatment.

135.    Bassett is liable under the FLSA and NYLL for failing to pay Willoughby and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

136.    Consistent with Bassett's illegal automatic meal break deduction policy, Willoughby and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

137.    Consistent with Bassett's illegal shift differential and bonus pay scheme, Willoughby and the Putative Class Members were not paid overtime compensation at the proper premium rate (based on *all* renumeration received) when they worked more than 40 hours in a workweek.

138.    As part of its regular business practices, Bassett intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and NYLL with respect to Willoughby and the Putative Class Members.

139.    Bassett's illegal automatic meal break deduction policy deprived Willoughby and the Putative Class Members of the premium overtime wages they are owed under state and federal law.

140.    Likewise, Bassett's illegal shift differential and bonus pay scheme deprived Willoughby and the Putative Class Members of the premium overtime wages they are owed under state and federal law.

141.     There are many similarly situated FLSA Collective Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

142.     This notice should be sent to the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

143.     Those similarly situated employees are known to Bassett, are readily identifiable, and can be found through Bassett's business and personnel records.

## BASSETT'S FLSA & NYLL VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD FOR THE FLSA & NYLL

144.     Willoughby realleges and incorporates all other paragraphs by reference.

145.     Bassett knew the Security Officers that work at its various healthcare facilities, including Willoughby and the Putative Class Members, were its employees.

146.     Bassett knew Willoughby and the Putative Class Members were non-exempt employees entitled to overtime because Bassett uniformly classified and paid them as such.

147.     Bassett knew Willoughby and the Putative Class Members were its hourly employees because Bassett uniformly paid these employees on an hourly basis.

148.     Bassett knew Willoughby and the Putative Class Members worked more than 40 hours in at least one workweek during the relevant statutory periods because Bassett required these employees to record their hours worked using its timeclock system.

149.     Bassett knew it was subject to the FLSA and NYLL, including their respective overtime provisions.

150.     Bassett knew the FLSA and NYLL require it to pay employees, including Willoughby and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees'

regular rates of pay – based on all renumeration received – for all hours worked in excess of 40 hours in a workweek.

151.    Bassett knew it paid Willoughby and the Putative Class Members shift differentials and/or bonuses depending on what types of shifts they worked.

152.    Bassett knew it excluded Willoughby's and the Putative Class Members' shift differentials and bonuses in calculating these employees' regular rates of pay for overtime purposes.

153.    Bassett knew it was required to include Willoughby's and the Putative Class Members' shift differentials and bonuses in calculating these employees' regular rates of pay for overtime purposes.

154.    Nonetheless, Bassett failed to include Willoughby's and the Putative Class Members' shift differentials and bonuses in calculating these employees' regular rates of pay for overtime purposes.

155.    Thus, Bassett knew, should have known, or recklessly disregarded the fact that it failed to pay Willoughby and the Putative Class Members overtime wages at the proper premium rate – based on all renumeration received – in violation of the FLSA and NYLL.

156.    Bassett's failure to pay Willoughby and the Putative Class Members overtime wages at the proper premium rate was neither reasonable, nor was the decision not to pay these employees overtime wages at the proper premium rate – based on all renumeration received – made in good faith.

157.    Bassett's failure to pay Willoughby and the Putative Class Members overtime compensation at the proper premium rate was not the result of a *bona fide* dispute.

158.    Bassett knew the FLSA and NYLL required it to pay Willoughby and the Putative Class Members for all hours these employees performed compensable work.

159.    Bassett knew it failed to provide Willoughby and the Putative Class Members with *bona fide* meal breaks.

160.   Bassett knew Willoughby and the Putative Class Members regularly worked during their unpaid meal breaks because Bassett expected and required them to do so.

161.   Bassett knew Willoughby and the Putative Class Members regularly spent their meal breaks substantially performing their normal security job duties for Bassett's predominant benefit.

162.   Bassett knew Willoughby and the Putative Class Members performed compensable work during their unpaid meal breaks.

163.   Thus, Bassett knew, should have known, or recklessly disregarded the fact that Willoughby and the Putative Class Members did not actually receive *bona fide* meal breaks.

164.   Bassett knew that, as Willoughby's and the Putative Class Members' employer, it had a duty to ensure these employees were not performing work that Bassett did not want performed during their unpaid "meal breaks."

165.   Bassett knew it automatically deducted 30 minutes per shift from Willoughby's and the Putative Class Members' recorded work time and wages for "meal breaks."

166.   Bassett knew it automatically deducted 30 minutes per shift from Willoughby's and the Putative Class Members' recorded work time and wages for "meal breaks" regardless of whether these employees actually received *bona fide* meal breaks.

167.   Nonetheless, Bassett failed to pay Willoughby and the Putative Class Members overtime compensation for all overtime hours worked, including hours worked during their unpaid meal breaks, during workweeks in which these employees worked more than 40 hours.

168.   Thus, Bassett knew, should have known, or recklessly disregarded the fact that it did not pay Willoughby and the Putative Class Members for all hours these employees performed compensable work, including the compensable work they performed during their unpaid meal breaks.

169.    In other words, Bassett knew, should have known, or recklessly disregarded the fact that it failed to pay Willoughby and the Putative Class Members overtime wages for all overtime hours worked in willful violation of the FLSA and NYLL.

170.    Bassett's failure to pay Willoughby and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours worked made in good faith.

171.    Bassett's failure to pay Willoughby and the Putative Class Members overtime compensation for all overtime hours worked was not the result of a *bona fide* dispute.

172.    Indeed, Bassett has been sued previously by employees for failing to pay overtime wages for all overtime hours worked, including for automatically deducting compensable work time for meal breaks. *See, e.g., Walrath, et al. v. Bassett Healthcare Network*, No. 6:21-CV-01179-DNH-ATB (N.D.N.Y.).

173.    Bassett knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Willoughby and the Putative Class Members of overtime compensation at the proper premium rate for all overtime hours worked in violation of the FLSA and NYLL.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

174.    Willoughby realleges and incorporates all other paragraphs by reference.

175.    Willoughby brings his FLSA claim as a collective action on behalf of himself and the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

176.    Bassett violated, and is violating, the FLSA by failing to pay Willoughby and the FLSA Collective Members overtime wages at 1.5 times these employees' regular rates of pay – based on all renumeration received – for all hours worked in excess of 40 in a workweek, including hours worked "off the clock" during these employees' unpaid meal periods.

177.    Throughout the relevant period, Bassett automatically deducted 30 minutes/shift from Willoughby's and the FLSA Collective Members' recorded hours worked and wages for meal breaks.

178.    But throughout the relevant period, Willoughby and the FLSA Collective Members did not actually receive *bona fide* meal breaks.

179.    Instead, throughout the relevant period, Bassett expected and required Willoughby and the FLSA Collective Members to remain on-duty and perform compensable work during their unpaid meal breaks.

180.    Further, throughout the relevant period, Bassett paid Willoughby and the FLSA Collective Members shift differentials and/or bonuses that Bassett failed to include in calculating these employees' regular rates of pay for overtime purposes.

181.    Willoughby and the FLSA Collective Members have been harmed as a direct and proximate result of Bassett's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Bassett derived a direct and substantial benefit.

182.    Bassett knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Willoughby and the FLSA Collective Members overtime compensation at the proper premium rate for all overtime hours worked.

183.    Bassett's failure to pay Willoughby and the FLSA Collective Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

184.    Accordingly, Willoughby and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

C<small>OUNT</small> II

F<small>AILURE TO</small> P<small>AY</small> O<small>VERTIME</small> W<small>AGES</small> U<small>NDER THE</small> NYLL
(N<small>EW</small> Y<small>ORK</small> C<small>LASS</small>)

185.    Willoughby realleges and incorporates all other paragraphs by reference.

186.    Willoughby brings his NYLL claim as a class action on behalf of himself and the New York Class Members pursuant to F<small>ED</small>. R. C<small>IV</small>. P 23.

187.    The conduct alleged violates the NYLL and its implementing regulations, N.Y. L<small>AB</small>. L<small>AW</small> §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2.

188.    At all relevant times, Bassett was an "employer" subject to the requirements, and within the meaning, of the NYLL and its implementing regulations. *See* N.Y. L<small>AB</small>. L<small>AW</small> §§ 190(3) and 651(6).

189.    At all relevant times, Bassett employed Willoughby and the New York Class Members as covered "employees" within the meaning of the NYLL. *See* N.Y. L<small>AB</small>. L<small>AW</small> §§ 190(2) and 651(5).

190.    The NYLL requires employers, like Bassett, to pay employees, including Willoughby and the New York Class Members, overtime compensation at rates not less than 1.5 the employee's regular rate of pay for all hours worked over 40 in one workweek. *See* N.Y. L<small>AB</small>. L<small>AW</small> §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

191.    Willoughby and the New York Class Members are entitled to overtime pay under the NYLL.

192.    Bassett violated, and is violating, the NYLL by failing to pay Willoughby and the New York Class Members overtime wages at the proper premium rate – based on all remuneration received – for all hours worked in excess of 40 in a workweek, including hours worked during these employees' unpaid meal periods. *See* N.Y. L<small>AB</small>. L<small>AW</small> §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

193.    Throughout the relevant period, Bassett automatically deducted 30 minutes/shift from Willoughby's and the New York Class Members' recorded hours worked for meal breaks.

- 24 -

194.    But throughout the relevant period, Willoughby and the New York Class Members did not actually receive *bona fide* meal breaks.

195.    Instead, throughout the relevant period, Bassett expected and required Willoughby and the New York Class Members to remain on-duty and perform compensable work during their unpaid meal breaks.

196.    Further, throughout the relevant period, Bassett paid Willoughby and the New York Class Members shift differentials and/or bonuses that Bassett failed to include in calculating these employees' regular rates of pay for overtime purposes.

197.    Willoughby and the New York Class Members have been harmed as a direct and proximate result of Bassett's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Bassett derived a direct and substantial benefit.

198.    Bassett knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Willoughby and the New York Class Members overtime compensation at the proper premium rate for all overtime hours worked.

199.    Bassett's failure to pay Willoughby and the New York Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

200.    Bassett's failure to pay Willoughby and the New York Class Members overtime compensation at the proper premium rate for all overtime hours worked was not the result of a *bona fide* dispute.

201.    Thus, Bassett's NYLL violations with respect to Willoughby and the New York Class Members were "willful" within the meaning of Section 198 of the NYLL. *See* N.Y. LAB. LAW § 198.

202.    Accordingly, Willoughby and the New York Class Members are entitled to recover their unpaid overtime compensation under the NYLL in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as interest, penalties, and attorney's fees and costs. *See* N.Y. LAB. LAW §§ 198(4) and 663(1)

## JURY DEMAND

203.    Willoughby demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Willoughby, individually and on behalf of the Putative Class Members, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Willoughby and his counsel to represent the interests of the FLSA Collective and New York Class;

d.    An Order pursuant to Section 16(b) of the FLSA finding Bassett liable for unpaid back wages due to Willoughby and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid compensation;

e.    An Order pursuant to the NYLL finding Bassett liable for unpaid back wages due to Willoughby and the New York Class Members, plus liquidated damages in an amount equal to their unpaid compensation, and penalties;

f.  Judgment awarding Willoughby and the Putative Class Members all unpaid wages, penalties, and other damages available under the FLSA and NYLL;

g.  An Order awarding attorney's fees, costs, and expenses;

h.  Pre- and post-judgment interest at the highest applicable rates; and

i.  Such other and further relief as may be necessary and appropriate.

Dated: June 29, 2023

Respectfully submitted,

**E. STEWART JONES
HACKER MURPHY, LLP**

By: */s/ David Iversen*
David I. Iversen, Esq.
NY Bar No. 519342
28 Second Street
Troy, New York 12180
518-274-5820 – Telephone
518-274-5875 – Fax
diversen@joneshacker.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Fax
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Fax
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**